ORIGINAL

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: NOV 0 2 2017
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA

          - v. -

PHILIP JACOBY,

          Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**INFORMATION**

**17 CRIM 676**

### COUNT ONE
### (False Statements to Auditors)

The United States Attorney charges:

#### Relevant Persons and Entities

1. At all times relevant to this Information, Osiris Therapeutics, Inc. ("Osiris" or the "Company") was a publicly-traded company specializing in the research, development and marketing of regenerative medicine products, headquartered in Columbia, Maryland. Osiris sold its products either through its direct sales force, or, more typically, through numerous distributors. Osiris's securities traded under the symbol "OSIR" on the National Association of Securities Dealers Automated Quotations ("NASDAQ") exchange.

2. From in or about 2008 up to and including in or about September 2015, PHILIP JACOBY, the defendant, held the position of Chief Financial Officer ("CFO") of Osiris. From in or about September 2015 through in or about January 2016, JACOBY held the


JUDGE COTE

position of Principal Accounting Officer. During the period that JACOBY was the CFO of Osiris, he signed Osiris's quarterly and yearly financial reports that were required to be filed with the United States Securities and Exchange Commission ("SEC").

### Osiris's Focus on Revenue

3. From at least in or about 2014, Osiris management was focused on the company's "top line," or gross revenue growth and, in particular, on being able to demonstrate quarter-over-quarter revenue growth.

4. For example, a former CEO of Osiris (the "CEO") regularly prepared internal presentations emphasizing the company's historical quarter-over-quarter revenue growth and emphasizing the need to achieve future growth.

5. Similarly, in public earnings calls run by the CEO and in its earnings press releases, the Company touted the Company's revenue performance and quarter-over-quarter revenue growth.

### Improper Accounting at Osiris With Respect to Distributor-1

6. Between approximately 2010 and approximately 2015, Distributor-1 was a distributor for Osiris's Ovation product, among other products. Distributor-1 was owned in its entirety by a sole principal ("Owner-1").

7. In or about September 2013, the Food and Drug Administration ("FDA") informed Osiris that Ovation failed to meet certain regulatory requirements and thus required pre-

marketing approval from the FDA, which Ovation did not have. Thereafter, Osiris agreed with the FDA that it would not sell Ovation after December 31, 2014.

8.  In order to maintain access to Ovation following December 31, 2014, Distributor-1 agreed to take possession of a significant quantity of Ovation prior to December 31, 2014 and by December 2014 was in possession of approximately $1.8 million worth of Ovation. Because Distributor-1 lacked the ability to pay for such a large purchase, the Ovation was shipped to Distributor-1 on consignment.  Because the product was on consignment, Osiris could not properly recognize revenue until Distributor-1 had sold the product to an end user or Distributor-1 otherwise agreed to purchase the product.

9.  In or about December 2014, PHILIP JACOBY, the defendant, requested that Owner-1 convert some or all of the consigned inventory to inventory owned by Distributor-1 by December 31, 2014.  To the extent other revenue recognition criteria were satisfied, and the agreement was completed by December 31, 2014, this arrangement would have allowed Osiris to recognize revenue for that product in the fourth quarter of 2014.

10.  Notwithstanding internal pressure to make sales, however, PHILIP JACOBY, the defendant, and Owner-1 did not reach

a final agreement regarding the conversion of the consigned inventory until at least in or about January 2015. For example:

      a. On or about December 23, 2014, the CEO emailed JACOBY and others saying that, "Q4 is becoming a big challenge. It's not good" and complaining that Osiris was only at about $18.5 million in revenue for the quarter, which the CEO said represented no growth. The CEO asked JACOBY to confirm that Osiris would "add about $1 million transfer fee from Ovation."

      b. On or about December 23, 2014, JACOBY emailed Owner-1 and said that "most importantly" JACOBY wanted to "chat" with Owner-1 about "converting the consignment inventory into [Distributor-1] owned product and the related payment terms" and wanted to "convert much/most of the Ovation consignment sales into sales in Q4-2014 and want [Owner-1's] thoughts and your suggestions on payment terms." Owner-1 did not respond to the email at any point in December 2014.

      c. On or about December 31, 2014, the final day of the fourth quarter, JACOBY and the CEO exchanged the following text messages:

> CEO: Did you speak to [Owner-1]?
>
> JACOBY: I sent her a note but haven't heard back from her yet - I'll try again tomorrow. My guess is that her family is in [a vacation location] for the holidays. I also sent a note to [another individual] before Christmas and haven't heard anything from him - looks like that one won't be easy . . .

> CEO: . . . I just wanted to be sure that we can take care of the Q with [Owner-1]. I assume that it will be OK, but hate to 'assume.' Do you want me to reach out today?
>
> JACOBY: [Owner-1] and I shared txt this morning – we'll talk on Friday but all should be good.
>
> CEO: Ok. Thx. Let's finalize the numbers next week. Q4 = $20.2 million is what good looks like to me.

    d. JACOBY and OWNER-1 did not communicate by email or telephone again until on or about January 5, 2015, when JACOBY emailed Owner-1 saying, "I'd like to convert roughly $1.2 million of the Consignment Inventory to sales as of 31Dec2014 . . . Give some thought to payment terms on the Ovation sales and let's discuss to wrap this up." JACOBY and Owner-1 spoke by phone that same day.

    e. On or about January 8, 2015, JACOBY and Owner-1 again communicated by email and JACOBY again asked Owner-1 to confirm the payment schedule for the conversion of the consigned inventory.

    11. Despite the fact that no agreement was reached in 2014, Osiris, at the direction of PHILIP JACOBY, the defendant, booked approximately $1.1 million in revenue related to the conversion of consignment product in the fourth quarter of 2014 (the "Distributor-1 Transaction").

### The Defendant Conveys False Information to Auditors After Improper Accounting Is Questioned

12. In or about October 2015, the Company's auditors (the "Auditors"), in connection with an inspection by the Public Company Accounting Oversight Board (the "PCAOB"), requested additional documentation and information supporting Osiris's recognition revenue in December 2014 pursuant to the Distributor-1 Transaction. In an effort to deceive the Auditors and the PCAOB, PHILIP JACOBY, the defendant, provided or caused to be provided false, inaccurate and misleading information to the Auditors.

13. For example, in or about October 2015, PHILIP JACOBY, the defendant, and others prepared a memorandum from Osiris to its Auditors attempting to justify the recognition of $1.1 million of revenue from the Distributor-1 Transaction in the fourth quarter of 2014. In the memorandum, JACOBY falsely represented that on December 31, 2014, JACOBY had "discussed the sale terms with [Owner-1] via a conference call, and [Owner-1] agreed to purchase 933 units of Ovation for $1,072,950." As JACOBY well knew, no telephone call had taken place on December 31, 2014.

14. Similarly, on or about November 5, 2015, PHILIP JACOBY, the defendant, created a letter, backdated to December 29, 2014, purporting to memorialize an agreement between Osiris

and Distributor-1 (the "Jacoby Fraudulent Document"). That same day, JACOBY used his personal email account to send an email to Owner-1 stating:

> attached is something that I think you should find and send to me in an email saying you had this in your file from late last year, and just came across it - and that it does memorialize our several phone conversations . . . . . Call me if necessary, but write a wonderfully warm and convincing email, please - send it to my Osiris email.

15. Owner-1 complied and sent the Jacoby Fraudulent Document to the Osiris email account of PHILIP JACOBY, the defendant. JACOBY then forwarded Owner-1's email containing the Jacoby Fraudulent Document to the CEO and the then-CFO of Osiris, who forwarded the document to the Auditors.

### Statutory Allegation

16. In or about October and November 2015, in the District of Maryland and elsewhere, PHILIP JACOBY, the defendant, as an officer of an issuer of publicly traded securities, knowingly and willfully made and caused to be made materially false and misleading statements to an accountant and omitted to state, and caused others to omit to state to an accountant, material facts necessary in order to make statements made, in light of the circumstances under which such statements were made, not misleading, in connection with an audit, review and examination of the financial statements of the issuer required to be filed with the SEC under the Securities Exchange Act of 1934 and in

connection with the preparation and filing of a document and report required to be filed with the SEC, to wit, JACOBY fabricated and caused to be fabricated a backdated letter purporting to document revenue for the Distributor-1 Transaction, which JACOBY then caused to be provided to the Auditors in connection with the Auditors' audit, review and examination of Osiris's 2014 10-K and Third Quarter 2015 10-Q.

(Title 15, United States Code, Sections 78m and 78ff, Title 17, Code of Federal Regulations, Section 240.13b2-2, and Title 18, United States Code, Section 2)

*[signature]*

JOON H. KIM
Acting United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

---

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

---

**UNITED STATES OF AMERICA**

- v. -

**PHILIP JACOBY,**

Defendant.

---

**INFORMATION**

17 Cr. \_\_\_ ( )

(Title 15, United States Code, Sections 78m and 78ff, Title 17, Code of Federal Regulations, Section 240.13b2-2, and Title 18, United States Code, Section 2.)

JOON H. KIM
Acting U.S. Attorney.

---

11/2/2017 Waiver of Indictmet Filed.
Cote, USDJ