```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4              v.                              17 CR 676 (DLC)

 5   PHILIP JACOBY,

 6                  Defendant.

 7   ------------------------------x
                                                New York, N.Y.
 8                                              February 2, 2018
 9                                              11:00 a.m.

10
     Before:
11
                         HON. DENISE COTE,
12
                                         District Judge
13

14                          APPEARANCES

15   GEOFFREY S. BERMAN
          Interim United States Attorney for the
16        Southern District of New York
     DANIEL TEHRANI
17   REBECCA MERMELSTEIN
     BRENDAN QUIGLEY
18        Assistant United States Attorneys

19   KING SPALDING
          Attorneys for Defendant
20   BY:  WILLIAM JOHNSON

21   ALSO PRESENT:  JIN TAE KIM, United States Postal Inspector

22

23

24

25
```

1              (Case called)
2              THE DEPUTY CLERK:  Is the government ready to proceed?
3              MR. TEHRANI:  Yes.  Good morning, your Honor.  Daniel
4    Tehrani, Rebecca Marmelstein, and Brendan Quigley for the
5    government.  With us at counsel table is Postal Inspector Jin
6    Kim.
7              THE COURT:  Thank you.
8              For Mr. Jacoby, are you ready to proceed?
9              MR. JOHNSON:  Yes, your Honor.  William Johnson from
10   King Spalding on behalf of Mr. Jacoby who is with me at counsel
11   table.
12             THE COURT:  Welcome, everyone.
13             So, Mr. Johnson, have you and your client both read
14   the presentence report?
15             MR. JOHNSON:  Yes, your Honor.
16             THE COURT:  Have you discussed it with each other?
17             MR. JOHNSON:  Yes, we have.
18             THE COURT:  Do you have any objections to it other
19   than what might be contained in your written sentencing
20   submissions to me?
21             MR. JOHNSON:  No, your Honor.
22             THE COURT:  Thank you.
23             The presentence report is made a part of this record
24   and placed under seal.  If an appeal is taken, counsel on
25   appeal may have access to the sealed report without further

1     application to this Court.
2             There is agreement here that the offense level is 9,
3     the criminal history category is I, and the guidelines range is
4     4 to 10.  I've reviewed all of those calculations and adopted
5     them as my own.
6             I have submissions from the parties.  I have the
7     government's sentencing submission filed on January 26, and I
8     have the defendant's sentencing submission of January 19.  Some
9     personal sensitive information has been redacted from the
10    publicly filed document.
11            Have you, Mr. Johnson, provided the redacted material
12    to Ms. Rojas for filing under seal?
13            MR. JOHNSON:  Yes.  I need to double-check that,
14    your Honor.  I know we provided it to chambers.  I need to make
15    sure that it's in your file.
16            THE COURT:  If you could coordinate with my deputy
17    after this to make sure that everything has been filed
18    appropriately in this court.
19            There is a request here for a non-guideline sentence
20    based on the defendant's health and also arguments with respect
21    to the fact that this conduct was aberrational, given his life
22    story.  I've read the materials.  I'm prepared to hear from the
23    parties.
24            Mr. Tehrani, did you wish to add to the government's
25    sentencing submission?

1      MR. TEHRANI:  No, your Honor.  As we set forth in our

2  submission, we obviously view this as a very serious offense.

3  It is an officer of a public company who not only lied but

4  fabricated documentation in order to deceive auditors.  We

5  believe that's conduct that warrants serious punishment.

6      But rather than belabor the arguments that we made in

7  our sentencing submission, unless the Court has any particular

8  question, we're prepared to rest on our submission.

9      THE COURT:  Thank you.

10     Mr. Johnson.

11     MR. JOHNSON:  Your Honor, if I could address the

12  Court.  I just recently had some surgery.  My voice is not --

13  could I use the podium?

14     THE COURT:  Absolutely.

15     MR. JOHNSON:  Thank you.

16     I'll try to be brief, your Honor.  We are seeking a

17  sentence of probation.  We think that the essence of the

18  offense here is that Mr. Jacoby regrettably prepared a one-page

19  back-dated memo to support recognition of revenue that was

20  subsequently given to his auditor.

21     We think the key point is that he has fully

22  acknowledged that was improper.  He has not been charged with

23  accounting fraud.  The government investigated that, and we

24  think that the circumstances do indicate that at least he

25  believed, even if he was wrong, that he had a good-faith basis

1  for believing the timing of the recognition of the revenue does
2  not justify what he did and only explains his reasons for doing
3  that.
4      But I do want to address the strength of the
5  government's arguments in response to our request for a
6  non-guideline sentence.  They say that his conduct was
7  particularly pernicious and have compared it to Enron,
8  WorldCom, and Tyco.
9      I happen to know obviously that this Court presided
10 over the WorldCom massive civil litigation that resulted in
11 historic settlements.  I personally tried the WorldCom criminal
12 case.  This case is not WorldCom, and it's not Enron.
13 Mr. Jacoby, respectfully -- he's not Scott Sullivan or Andy
14 Fastow.  I won't belabor it, but that's not even close.
15     He shouldn't have done what he did.  It is a clear
16 aberration.  I think, again, as a way of explaining, he
17 believed he had a basis based on verbal discussions with the
18 distributor.
19     We're not here to try that.  He was not charged with
20 accounting fraud, and we don't think that he should be
21 sentenced based on a belief that he engaged in accounting
22 fraud.
23     The company settled with the SEC for $1.5 million.
24 Again, this is not an Enron or WorldCom situation.  We think
25 based on the facts as they played out, the memo, as bad as it

1  was, as a mistake in judgment as it was, ultimately criminal as
2  it was, had no effect on the company.
3           The very next day after Mr. Jacoby submitted the memo,
4  the company came out with a press release disavowing the
5  revenue.  They had already decided what they were going to do,
6  and in public companies, 24 hours is not a long enough time to
7  evaluate all the circumstances of accounting issues.
8           They had already done that before.  They knew what
9  they were going to do.  They gave him one last chance to
10 justify it.  He gave them what he gave them, they didn't
11 believe it, and they went the other way.
12          The government says in its memo that it doesn't matter
13 that he was unsuccessful in deceiving the auditors.  I
14 guarantee you that if he had deceived them for a year or more
15 or longer, they would be standing here in front of you telling
16 you that you should sentence him to a longer sentence, or they
17 would be arguing it stronger because of the length of that
18 deception.  It didn't happen here in that way.
19          With respect to Mr. Jacoby's personal circumstances,
20 we submit that the information in the PSR and the information
21 we've submitted show that this crime was truly an aberration in
22 his life, and I don't think the government disputes this point.
23          He has letters from friends and colleagues that show
24 he's a kind and generous man.  He's a hard-working professional
25 who took not just pride in his own work but in the work that

1  his company was doing to help provide and develop therapeutic
2  products for patients.
3        He has fully accepted responsibility here.  He entered
4  a preindictment plea and did not waste the government's time
5  when they approached us and readily agreed to plead guilty to
6  the charge.  He has no criminal history.
7        We think that separate and apart from the Court's view
8  and the government's view about the accounting revenue
9  questions, his declining health is an important sentencing
10  consideration that we believe, in combination with the other
11  factors, would suggest that probation is appropriate.
12        Incarceration would likely exacerbate his condition.
13  The probation department seems to agree.  There is no risk of
14  him being a recidivist for many reasons but certainly because
15  of his health.
16        He was medically retired from Osiris before this case
17  came up.  His health has declined since then.  We think that he
18  has learned his lesson.  Even regardless of that, he will never
19  be in a position to do something like this again.
20        With respect to the point that I think is the most in
21  contention, general deterrence, we don't think that a sentence
22  of incarceration is required to serve that purpose.
23        The government says that a minimal sentence would
24  shake the public's confidence in the integrity of the public
25  markets.  I think the facts of this case don't support that

1  extreme statement.

2           If there really is anyone out there who is watching
3  this case and considering how to interact with a public company
4  auditor, we think they've already gotten the message, if you
5  lie, the government will pursue you, they will charge you, and
6  you will be a felon for the rest of your life, and you will
7  lose your career in the process.

8           We certainly don't think, as the government submits,
9  that a reasonable person would look at all the facts here and
10 actually be emboldened to commit a crime were Mr. Jacoby be
11 sentenced to probation.

12          So, for all those reasons, we would request that the
13 Court sentence him to probation.  With respect to other
14 portions of sentencing as to a fine, probation has recommended
15 a fine of $10,000.  We'd ask that a lesser amount be imposed,
16 if the Court is inclined to do so.

17          As we noted in our memo, he is a defendant in an SEC
18 action, as well as multiple other parallel suits.  There he
19 faces potential judgments and other financial penalties.

20          Even putting those aside, he will face significant
21 legal costs.  After he pleaded guilty, his company refused to
22 pay several months of past legal bills for our firm and has cut
23 off any further advancement and indemnification of fees in
24 connection with all of his other litigation.

25          As the Court is aware and as the PSR states, he and

1   his wife have and will continue to have various financial
2   liabilities relating to the child custody suit with his wife's
3   former husband, and his longterm financial picture will almost
4   certainly get worse in the near future.
5            As the PSR notes, his disability payments will cease
6   when he turns 67 next year, and what he will have left from
7   Social Security benefits, IRA funds, and other assets will not
8   come close to making up the difference of that money that he is
9   getting now.
10           The final point I'd like to make is with respect to
11  the probation department's recommendation for a special
12  condition of alcohol testing and treatment, we don't think that
13  that's necessary respectfully.
14           THE COURT:  I'm not considering that.
15           MR. JOHNSON:  You're not?
16           THE COURT:  I'm not.
17           MR. JOHNSON:  Then I will stop, your Honor, unless you
18  have any questions.
19           THE COURT:  No.
20           MR. JOHNSON:  Thank you.
21           THE COURT:  Mr. Jacoby, is there anything that you
22  wish to say to me on your behalf in connection with your
23  sentence?  Sir, if you want to remain seated, you may.
24           THE DEFENDANT:  I'll stand.  Thank you, your Honor.
25           I would like to say that I'm truly sorry for what I've

1  done.  I know that it's wrong to submit a back-dated memo to
2  the auditors, and I don't really have a good answer for why
3  I've done this.
4              The best I can say -- this is just a reason, but it's
5  not an excuse -- is that I wrote the memo because I was really
6  frustrated with the auditors, BDO.  We had honestly briefed BDO
7  of the details of the transactions in question during their
8  audit before the PCAOB reviewed.  They signed off on it, and
9  the audit was completed without any problems related to that
10 transaction.
11             I know that people have since disagreed with how we
12 accounted for that revenue, and I thought it was proper to book
13 it when we did because I thought I had at least a verbal
14 agreement on all the important terms of the transaction.
15             I got extremely frustrated with BDO questioning months
16 and months after they initially reviewed it and apparently
17 found no problems with the accounting.  I let my frustrations
18 get the better of my judgment, but I know that's not an excuse,
19 and I have no one but myself to blame for this.
20             I should not have done what I did, no matter what the
21 circumstances.  I've tried to lead an honest life and have an
22 honorable career.  I've been able to do that up until this
23 incident.  I still can't believe I let myself do something like
24 this, and I'm appalled and ashamed that I did.
25             It's been difficult for me to come to grips with this,

1  particularly because I'm not healthy enough to work anymore and
2  I won't have the opportunity to earn back the trust of people
3  in the way I know best, working hard, helping people, and
4  trying to do the right thing.
5          I would like to thank my family and friends who have
6  supported me.  I've had a really hard time talking about this
7  and didn't even let them know about it until very recently.
8  I've been truly touched by the letters of support from them,
9  and I want to apologize for letting them down.
10         I have learned an extremely important and valuable
11 lesson and wish all of this had never happened.  I understand
12 you need to impose a sentence, and I simply ask for the mercy
13 of the Court.  Thank you, your Honor.
14         THE COURT:  So, Mr. Jacoby, I am going to impose a
15 sentence of time served to be followed by a term of supervised
16 release to follow of two years.
17         Besides the standard conditions, I'm going to require
18 that the additional condition be that you pay a fine of
19 $10,000.  I decline to reduce the fine amount below that
20 recommended by the probation department.  I think that payment
21 of a fine here is an important component of the sentence.  And
22 I impose a special assessment of $100.
23         You may be seated.  I want to explain why I'm imposing
24 the sentence that I am.
25         It's absolutely criminal and wrong from every

1    perspective to fabricate a document; to involve a third party,
2    the distributor, in the fraudulent conduct; to mislead
3    auditors; to essentially ultimately understand that a false
4    record will have an impact on the financial standing of the
5    company, and it's a public company.  So the ramifications, the
6    ripple effect of this kind of fraud, are significant.
7             However, I am very influenced here by your health.
8    I'm very influenced by the scope of the criminal activity, how
9    long it lasted, the nature of it, compared to the entirety of
10   your career.
11            I'm glad that you were prosecuted for this.  I'm glad
12   the extent of the criminal conduct is spread on the record and
13   available for others to learn from.  The penalty at this point
14   in your life is one that you will suffer from, perhaps, for the
15   rest of your life as the impact of this plays out in a variety
16   of ways.
17            Do I need to send you to prison also?  No.  There is
18   no reason here, in terms of individual deterrence, to send you
19   to prison.  I am convinced that even if you were working, you
20   would never do this again.
21            In terms of appropriate punishment, given the context
22   of everything I've just described, the punishment I'm imposing
23   is sufficient and appropriate.
24            In terms of general deterrence, well, that is a
25   problem because this is serious criminal activity.  It deserves

1   to be punished.  People need to be deterred.  This is wrongful.
2   But that's only one component here of a sentence.
3               I thought about that, and weighing your age and health
4   and all of the challenges that you face because of your health,
5   the fact that you're working days are over, the fact that this
6   is the only criminal activity for which you will have been
7   convicted in a long working career -- all of those factors tell
8   me that while a fine is appropriate, a financial penalty is
9   appropriate, sending you to prison at this time would not be
10  appropriate.
11              I want to advise you of your right to appeal.  If
12  you're unable to pay the cost of an appeal, you may apply for
13  leave to appeal in forma pauperis.  Any notice of appeal must
14  be filed within 14 days of the judgment of conviction.
15              Mr. Tehrani, are there any open counts?
16              MR. TEHRANI:  There are not, your Honor.
17              THE COURT:  With respect to payment of the fine, it
18  should be paid within 60 days.  I'm declining to impose a
19  special term of supervised release related to alcohol use.
20              I think that the defendant is under the supervision of
21  several physicians for serious health conditions.  They are the
22  persons most directly involved with his healthcare, including
23  any abuse of substances.  I leave it to them to take care of
24  Mr. Jacoby's health situation.
25              Thank you, all.